IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAURA ORTIZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-1082-M-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order No. 3-251*, this social security appeal was automatically referred for full case management. Before the Court are *Plaintiff's Opening Brief*, filed September 22, 2017 (doc. 16), *Defendant's Response Brief*, filed October 20, 2017 (doc. 17), and *Plaintiff's Reply Brief*, filed November 9, 2017 (doc. 18). Based on the relevant filings, evidence, and applicable law, the Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further administrative proceedings.

I.  BACKGROUND[1]

Laura Ortiz (Plaintiff) seeks judicial review of a final decision by the Acting Commissioner of Social Security (Commissioner) denying her claims for disability insurance benefits (DIB) and widow's insurance benefits (WIB) under Title II of the Social Security Act (Act).  (docs. 1, 16.)

**A.    Procedural History**

On June 7, 2013, Plaintiff filed her applications for DIB and WIB, alleging disability

---

[1]   The background information is summarized from the record of the administrative proceeding, which is designated as "R."

beginning April 11, 2013. (R. at 252-59.) Her claims were denied initially and upon reconsideration. (R. at 131-83.) Plaintiff requested a hearing before an administrative law judge (ALJ), and she personally appeared and testified at a hearing on March 16, 2016. (R. at 103-30.) On May 18, 2016, the ALJ issued a decision finding her not disabled and denying her claim for benefits. (R. at 41-60.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council and included new medical evidence. (R. at 29-40.) The Appeals Council determined that the new evidence did not provide a basis for changing the decision and denied her request for review on July 27, 2016, making the ALJ's decision the final decision of the Commissioner. (R. at 19-28.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was born on August 1, 1960, and was 55 years old at the time of the hearing before the ALJ. (R. at 40, 109.) She had a 7th grade education and was fluent in Spanish. (R. at 111.) She had past relevant work as a laundry supervisor. (R. at 125.)

    **2.    Medical Evidence**

On December 7, 2011, Plaintiff was referred by Dr. Guadalupe Bustamante, M.D., of the Cavero Medical Group, to complete a physical therapy program for bilateral wrist and forearm pain. (R. at 407-13.) At her initial evaluation, she showed strength at "5/5" in her elbows and "4/4" in her forearms. (R. at 412.) The record noted a "mild strength difference between grip strength and supinators/pronators with pain during testing." (R. at 412-13.) Two months later, the physical therapy records noted that Plaintiff had been "considered self-discharged at this time due to not returning to therapy" since her initial evaluation. (R. at 408.)

2

On February 22, 2013, Plaintiff met with rheumatologist Dr. Syed Rizvi, M.D., with complaints of pain "all over [her] body." (R. at 447-50.) She identified "constant, aching, burning" pain at an "8-9/10" level, but she denied any swelling in her joints or morning stiffness. (R. at 447.) During the physical exam, Dr. Rizvi noted that she "ambulat[ed] normal[ly]" with a full range of motion in her spine and hip, but she had pain and tenderness in the "extreme flexion" of her wrists. (R. at 449.) Dr. Rizvi diagnosed her with "myalgia and myositis," prescribed her pain medication, and referred her to physical therapy.[2] (R. at 450.)

From March 8, 2013, to June 7, 2013, Plaintiff had monthly appointments with Dr. Rizvi for treatment of her myalgia. (R. at 435-47.) She continued to complain of "constant, aching" pain all over her body, especially in her hands and wrists, but she always denied joint swelling or morning stiffness. (R. at 435, 438, 441, 444.) The physical exams consistently showed "normal" ambulation, a "complete handgrip," pain and tenderness in the "extreme flexion" of her wrists, and a full range of motion in her cervical spine, hips, and knees. (R. at 435, 440, 443, 446.) Dr. Rizvi also noted that Plaintiff was positive for "18/18" tender points consistent with fibromyalgia. (R. at 437, 440.) He diagnosed her with fibromyalgia and refilled her pain medication at each appointment. (R. at 437-38, 440, 443-44, 446-47.)

On April 16, 2013, Dr. Rizvi provided a medical opinion as to Plaintiff's physical limitations due to fibromyalgia. (R. at 602.) He opined that Plaintiff was unable to push or pull and could not lift anything "greater than 5 pounds." (R. at 602.)

On July 30, 2013, Dr. Vidya Madala, M.D., a state agency medical consultant (SAMC), completed a Physical Residual Functional Capacity (RFC) Assessment form based upon Plaintiff's

---

[2] Plaintiff was subsequently discharged from her physical therapy referral because she failed to attend. (R. at 462.)

3

medical evidence in the record. (R. at 136-38.) She opined that Plaintiff had the following exertional limitations: occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk with normal breaks for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday, with an unlimited ability to push/pull. (R. at 136-37.) She further opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 137.) She concluded that Plaintiff had some limitations in the performance of certain work activities, but those limitations would not prevent her from performing her past relevant work. (R. at 138.)

On September 13, 2013, Plaintiff returned to Dr. Rizvi with complaints of pain in her hands, shoulders, and back. (R. at 568-70.) She reported a "constant, aching, burning" pain all-over that was rated at a "10/10" level. (R. at 568.) She continued to deny joint swelling and morning stiffness, and she had "normal" ambulation, "bilateral complete handgrip," and a full range of motion in her cervical spine, elbows, shoulders, and knees. (R. at 569-70.) Dr. Rizvi again noted "18/18" positive tender points and pain/tenderness in her "extreme flexion" in both wrists, and he refilled her prescription for pain medication. (R. at 570.)

On February 25, 2014, Plaintiff presented to Los Barrios Unidos Community Clinic (Los Barrios) with complaints of body aches. (R. at 465-70.) All of the findings on her physical exam were "normal," including no edema in her extremities. (R. at 467.) The medical record noted that Plaintiff had been previously diagnosed at Los Barrios with diabetes mellitus and high blood pressure, but both were under control with medication. (R. at 465.) She was diagnosed with fibromyalgia and referred to a rheumatology specialist. (R. at 467-69.)

On March 18, 2014, Plaintiff returned to Los Barrios and met with rheumatologist Dr. Margarita Fallena, M.D., for her fibromyalgia. (R. at 473-76.) Plaintiff identified "severe pain"

4

throughout her body, particularly in her back and lower extremities. (R. at 473.) Dr. Fallena found "[m]ultiple fibromyalgia tender points," but the exam was "difficult" due to Plaintiff's "body habitus." (R. at 474.) She prescribed Lyrica for the pain and instructed Plaintiff to return in four weeks. (R. at 475-76.)

On April 16, 2014, Plaintiff returned to Dr. Fallena at Los Barrios. (R. at 489-92.) She reported "severe pain" that had been centralized in her right upper extremity for the past 3 days, but she also stated that the Lyrica had "help[ed] with the pain" and she could "walk more and get up easier from bed." (R. at 489.) Her Lyrica dosage was increased because it "helped with symptoms." (R. at 491.)

On August 28, 2014, Plaintiff returned to Los Barrios for medication refills. (R. at 536-40.) Her "review of systems" and physical exam showed no change from her previous examinations. (R. at 537-38.) She continued to be prescribed the increased dosage of Lyrica for her pain. (R. at 538.)

On December 1, 2014, Dr. Kavitha Reddy, M.D., an SAMC, reviewed the medical evidence on record and completed a Physical RFC assessment upon reconsideration. (R. at 169-71.) Dr. Reddy agreed with Dr. Madala's Physical RFC assessment from July 30, 2013, and he opined that Plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk with normal breaks for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday, with an unlimited ability to push/pull. (R. at 169-70.) She had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 170.)

On January 6 and 20, 2016, Plaintiff returned to Dr. Fallena for treatment of her fibromyalgia and joint pain. (R. at 597-601.) Plaintiff noted generalized pain in all joints from "head to toe." (R. at 594, 597.) Dr. Fallena found a full range of motion in her shoulders, elbows, wrists, hands, hips,

5

knees, ankles, and feet. (R. at 595, 598.) She further found that Plaintiff had "18 out of 18 tender points positive," and the joints in her bilateral shoulders, elbows, wrists, ankles, and knees were also tender. (R. at 595, 598.) After reviewing blood work labs, it was determined that Plaintiff was "negative for rheumatoid arthritis serologies" with "normal" inflammatory markers. (R. at 594.) She was diagnosed with fibromyalgia and polyarthralgia, and was instructed to take Lyrica twice a day for pain. (R. at 595-96, 598-99.)

### 3. Hearing Testimony

Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ on March 16, 2016. (R. at 103-30.) Plaintiff was represented by an attorney. (R. at 105.)

#### a. *Plaintiff's Testimony*

Plaintiff testified that she was 55 years old, stood 5'6", and weighed approximately 200 pounds. (R. at 109.) She had no young children and lived with her sister in a two-story house. (R. at 109-10.) She had a driver's license, but she did not drive anymore because her "hands hurt whenever [she went] to turn" the steering wheel. (R. at 110.) She had dropped out of school after completing the 7th grade and had no vocational training. (R. at 111.) She could not speak or read in English, but she was fluent and literate in Spanish. (R. at 111.) Her last job was for Aramark as a uniform inspector, which she quit in June 2013, because her "hands start[ed] to lock." (R. at 112.)

In reference to her medical problems, Plaintiff identified fibromyalgia, diabetes, high blood pressure, high cholesterol, and acid reflux. (R. at 114.) These conditions caused pain in her "waist, the hips, the back, and the knees." (R. at 114.) She could sleep for only four hours a night because of the pain. (R. at 116.) She was prescribed wrist braces that decreased her pain because it "help[ed] her not to bend" her hands. (R. at 118.) She also used a cane that was not prescribed. (R. at 119.) She

took Lyrica twice a day for the pain, but it helped only "a little bit." (R. at 119.)

Plaintiff further testified that she could walk only one city block at a time and could not lift anything over 5 pounds. (R. at 112, 119.) During the day, she did "nothing" aside from "watching television." (R. at 116.) Her sister completed all of the household chores for her, such as laundry, cleaning, shopping, and cooking. (R. at 117.) She could put on her own clothes, bathe, brush her teeth, and feed herself. (R. at 122.)

### b. VE's Testimony

The VE testified that she had reviewed Plaintiff's vocational records and determined that she had the past relevant work of laundry supervisor, DOT 361.137-010 (SVP: 6, light). (R. at 125.)

The ALJ asked the VE to consider a hypothetical individual of the same age, education, and work history as Plaintiff, and who also had the following restrictions: able to lift and carry 50 pounds occasionally and 25 pounds frequently; able to sit, stand, or walk for up to 6 hours with normal breaks in an 8-hour workday; frequently able to handle and finger bilaterally; and off-task 5% of the work day due to fatigue. (R. at 125.)

The VE testified that the hypothetical individual would be able to perform Plaintiff's past relevant work as a laundry supervisor. (R. at 125.) The VE further testified that this individual could perform jobs that existed in the national and regional economy, which included the following: floor waxer, DOT 381.687-034, with 96,000 jobs nationally and 6,000 in Texas; laundry worker, DOT 361.684-014, with 98,000 jobs nationally and 5,000 in Texas; and industrial cleaner, DOT 381.687-018, with 109,000 jobs nationally and 8,800 in Texas. (R. at 125-26.) She explained that "[a]ll of these [jobs were] medium with SVP of 2."[3] (R. at 125-26.) The ALJ then asked the VE if her

---

[3] The VE explained during her testimony that "according to the exhibits, [Plaintiff] performed [her past relevant work of laundry supervisor] at medium exertional level." (R. at 126-27.)

answers would be the same if that hypothetical individual was unable to communicate in English. (R. at 126.) The VE responded that everything would stay the same. (R. at 126.)[4]

**C.     ALJ's Findings**

The ALJ issued a decision denying benefits on May 18, 2016. (R. at 41-60.) At step one,[5] she determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 11, 2013. (R. at 50.) At step two, the ALJ found that the medical evidence established that Plaintiff had a severe combination of the following impairments: arthritis; polyarthritis; tendonitis; osteopenia; high blood pressure; fibromyalgia; and obesity. (R. at 50.) At step three, the ALJ concluded that Plaintiff's severe impairments or combination of impairments did not meet or equal the requirements for presumptive disability under the listed impairments in 20 C.F.R. Part 404. (R. at 50-51.)

The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform "medium" work, but she could only frequently handle and finger bilaterally and would be off-task for 5% of the work day due to fatigue. (R. at 51-53.) At step four, the ALJ relied upon the VE's testimony to find that Plaintiff was able to perform her past relevant work of laundry supervisor. (R. at 53.) At step five, the ALJ further relied upon the VE's testimony to find her capable of performing additional work that existed in significant numbers in the national economy, including jobs such as floor waxer, laundry worker, and industrial cleaner. (R. at 55.) Accordingly,

---

[4] The ALJ then asked the VE a second hypothetical involving a different hypothetical individual with the following restrictions: "limited to lifting or carrying no more than 5 pounds at any time;" able to stand/walk for at least 2 hours out of an 8-hour workday; able to sit for 6 hours out of an 8-hour workday; frequently able to handle and finger bilaterally; and off-task 5% of the work day due to fatigue. (R. at 127.) The VE responded that this individual would not be able to perform Plaintiff's past relevant work and would have no transferable skills. (R. at 127.) This second hypothetical was not a basis for the ALJ's decision.

[5] The five-step analysis used to determine whether a claimant is disabled under the Social Security Act is described more specifically below.

the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from the alleged onset of disability date of April 11, 2013, through the date of the decision. (R. at 55.)

**D.     New Evidence Submitted to the Appeals Council**

Plaintiff timely appealed the ALJ's decision to the Appeals Council and submitted new evidence consisting of additional treatment notes from Plaintiff's appointment with Dr. Fallena on April 18, 2016, as well as a treating source statement from Dr. Fallena. (R. at 608-20.) During the appointment, Plaintiff reported "worsening, generalized" pain that was constantly at a "10/10" level. (R. at 608.) Her physical exam continued to show a full range of motion in her shoulders, elbows, wrists, hands, hips, knees, ankles, and feet. (R. at 609.) She also continued to have "18 out of 18 tender points positive," including tenderness in the joints in her bilateral shoulders, elbows, wrists, ankles, and knees. (R. at 609.) In her treating source statement, Dr. Fallena opined that Plaintiff could stand for 15 minutes at one time; could sit for 60 minutes at one time; and was never able to lift, bend, stoop, or raise either arm. (R. at 617-18.) She further opined that Plaintiff had no inflammation in any of her "major peripheral joints." (R. at 618.)

The Appeals Council denied her request for review on July 27, 2016, after it "considered the additional evidence" submitted to it. (R. at 19-21.) The Council explained that the "information [did] not provide a basis for changing" the ALJ's decision. (R. at 20.)

## II. LEGAL STANDARD

Judicial review of the commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236

9

(5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's decision. *Id.*

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 189, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" will not be found to be disabled.

4. If an individual is capable of performing the work he had done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by vocational expert testimony, or other similar evidence. *Froga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. ISSUES FOR REVIEW

Plaintiff presents two issues for review:

1. Pain alone can disable, even when its existence is unsupported by objective medical evidence if linked to a medically determinable impairment. Fibromyalgia is recognized as an elusive condition that does not lend itself to objective testing. Did the [ALJ] err when she rejected the opinion of Dr. Rizvi because objective evidence did not support his opinion?

2. When new evidence is submitted directly to the Appeals Council, it must explain its evaluation of the new evidence in enough detail to permit a reviewing court to determine whether the [ALJ's] decision is still supported by substantial evidence. [Plaintiff] submitted a medical source statement from her treating rheumatologist to the Appeals Council. Can this Court perform its review if the Appeals Council made no findings about the new evidence?

(doc. 16 at 5-6.)

**A.** <u>**Treating Source Opinion**</u>

Plaintiff first argues that the ALJ erred by rejecting Dr. Rizvi's treating source opinions on her physical limitations due to fibromyalgia. (doc. 16 at 15-19.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529. Although every medical opinion is evaluated regardless of its source, the Commissioner generally gives greater weight to opinions from a treating source. 20 C.F.R. § 404.1527(c)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the claimant. *Id.* at § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the ALJ must give

12

that opinion controlling weight. *Id*. at § 404.1527(c)(2). If controlling weight is not given to a treating source's opinion, the ALJ considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id.* at § 404.1527(c)(1)–(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Id.* at 458.

Here, Dr. Rizvi provided a treating source opinion that Plaintiff could not push/pull or lift anything greater than 5 pounds at one time due to her fibromyalgia. (R. at 602.) In her decision, the ALJ reviewed this opinion and awarded it "little weight" because it was "inconsistent with the medical record as a whole, especially the most recent treatment notes." (R. at 52.)

Plaintiff contends that the ALJ erred in her assessment of Dr. Rizvi's opinion because

13

"[n]one of the objective findings cited by the ALJ are diagnostic of or indicate the severity of fibromyalgia." (doc. 16 at 16.) She correctly points out that the Social Security Regulations define fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2P, 2012 WL 3104869 (S.S.A. July 25, 2012). To establish that fibromyalgia is a medically determinable impairment, the claimant can provide evidence from an "acceptable medical source" showing: (1) a "history of widespread pain" persisting for at least 3 months; (2) evidence of at least 11 of 18 positive tender points during a physical examination; and (3) evidence that "other disorders that could cause the symptoms or signs were excluded." *Id.* Plaintiff further points to how both Drs. Rizvi and Fallena documented "18/18" positive tender points consistent with fibromyalgia, and how the "reasons given by the ALJ [when rejecting Dr. Rizvi's medical opinion] were irrelevant to the assessment of the opinion evidence." (*Id.* at 17-19.)

  In refusing to adopt Dr. Rizvi's opinion and assigning it "little weight," the ALJ's decision explained that this opinion was "inconsistent with the medical record as a whole, especially the most recent treatment notes." (R. at 52.) While it does not identify exactly how Dr. Rizvi's opinions were inconsistent with the medical record, the decision appears to refer to the objective clinical findings during Plaintiff's physical exams, which showed "normal ambulation, full range of motion, bilateral complete hand grip, normal musculoskeletal examination, and full range of motion of the bilateral lower extremities," as well as a "negative RA factor, only mild intermittent hand swelling, normal gait, . . . [and] no swelling." (R. at 52.) This type of rejection has been found to be an error because "[w]hen a claimant has an accepted diagnosis, such as fibromyalgia, that often lacks objective clinical findings, an allegation of an absence of objective clinical findings does not alone constitute

14

good cause to reject opinions of treating physicians." *Wilkerson v. Berryhill*, No. 3:16-CV-851-BN, 2017 WL 1091601, at *5 (N.D. Tex. Mar. 23, 2017) (citing *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 911-12 (N.D. Tex. 2008)). Because "fibromyalgia is an illness with only subjective symptoms," an absence of objective clinical findings "may be entirely consistent with the treating physician's conclusions," and "the ALJ's decision must do more than merely state that the opinions are not supported by any objective clinical findings." *Id.* (citing *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)).

Accordingly, the ALJ erred when she rejected Dr. Rizvi's treating source opinion on Plaintiff's limitations due to fibromyalgia without identifying any controverting opinion as to her "physical limitations in the workplace or what activities [she] would be able to perform." *Id.* (finding that the ALJ erred when he rejected a treating source statement on fibromyalgia simply because the treating source was inconsistent with "select observations that [the] plaintiff had diffuse tenderness but normal range of motion in the extremities, normal strength, normal reflexes, and normal coordination, with no cranial nerve or sensory deficit . . . and no musculoskeletal or psychiatric abnormality"); *see Childress v. Berryhill*, No. 4:16-CV-00795, 2017 WL 4417707, at *22 (S.D. Tex. Oct. 3, 2017) (finding error when the ALJ "simply found that . . . [a treating source's] opinion, was not supported by objective, medical findings" because of the "elusive nature of fibromyalgia" and the ALJ failed to "consult an expert on fibromyalgia" regarding the extent of the plaintiff's limitations due to this condition).

**B.     Harmless Error**

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are

15

affected." *Mays v. Bowen*, 837 F.2d 1362, 1363-64 (5th Cir. 1988). "[E]rrors are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. Nov. 28, 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Accordingly, to establish prejudice that warrants remand, Plaintiff must show that the proper consideration of Dr. Rizvi's medical opinion might have led to a different decision. *See id.* at 816 (citing *Newton*, 209 F.3d at 458).

Plaintiff argues that the ALJ's error prejudiced her because Dr. Rizvi identified limitations that were inconsistent with the hypothetical posed to the VE and with the jobs to which the ALJ determined she could return at steps four and five of the sequential analysis. (doc. 16 at 22-23.) During the hearing, the ALJ asked the VE to consider a hypothetical person with the following limitations: able to lift and carry 50 pounds occasionally and 25 pounds frequently; able to sit, stand, or walk for up to 6 hours with normal breaks in an 8-hour workday; frequently able to handle and finger bilaterally; and off-task 5% of the work day due to fatigue. (R. at 125.) The VE testified that this hypothetical individual would be able to perform Plaintiff's past relevant work as a laundry supervisor, as well as three other "medium" jobs, including floor waxer, laundry worker, and industrial cleaner. (R. at 125-26.)

Had the ALJ's decision reflected the proper assessment of Dr. Rizvi's medical opinion, it is not clear whether she would have adopted it and further limited Plaintiff's RFC, particularly since the new evidence submitted to the Appeals Council included an updated treating source statement from Dr. Fallena that appears to be consistent with Dr. Rizvi's opinions. (R. at 52, 617-18.) Even

16

if the ALJ afforded Dr. Rizvi's opinion no weight at all, it is not the duty of the reviewing court to "substitute its judgment of the facts for the ALJ's, speculate on what the ALJ could have done or would do on remand, or accept a *post hoc* rationalization." *Benton v. Astrue*, No. 3:12-CV-0874-D, 2012 WL 5451819 at *8 (N.D. Tex. Nov. 8, 2012). It is not inconceivable that the ALJ might have lowered Plaintiff's ability to lift, carry, push, or pull in the RFC if she had fully considered Dr. Rizvi's assessment of her limitations due to fibromyalgia. *See Bragg*, 567 F. Supp. 2d at 911-12 (finding remand was necessary when the ALJ erred by rejecting a treating source opinion regarding fibromyalgia with "a blanket allegation of an absence of objective clinical findings"). This change to the RFC would also affect Plaintiff's disability determination because the jobs cited by the ALJ during steps four and five of the sequential analysis were identified by the VE to be in the "medium" job base, which would be inconsistent with Dr. Rizvi's opinion that Plaintiff could lift/carry only 5 pounds at one time.[6] (R. at 32-33.) This would mean that there is nothing in the record to satisfy the Commissioner's burden to show the existence of other gainful employment available in the national economy that Plaintiff is capable of performing. *See Greenspan*, 38 F.3d at 236.

The ALJ's error was ultimately not harmless because it is not inconceivable that she would have reached a different decision had she properly considered Dr. Rizvi's treating source opinion on Plaintiff's limitations due to her fibromyalgia.[7] *See Beltran v. Berryhill*, No. 3:16-CV-2072-M, 2017 WL 4167513, at *4 (N.D. Tex. Sept. 20, 2017) (finding that remand was warranted when the

---

[6] At the hearing before the ALJ, the VE testified that Plaintiff's past relevant work as a laundry supervisor, as well as the positions of floor waxer, laundry worker, and industrial cleaner all required the ability to lift and carry 50 pounds occasionally and 25 pounds frequently. (R. at 125-27); *see* U.S. DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES at 98, 132 (1993).

[7] Because the ALJ's error in evaluating Dr. Rizvi's opinion necessitates remand and occurred during steps two and three of the sequential analysis, this Court need not consider Plaintiff's additional issue that the Appeals Council erred when it failed to "explain its evaluation of the new evidence [from Dr. Fallena] in enough detail to permit a reviewing court to determine whether the [ALJ's] decision is still supported by substantial evidence." (doc. 16 at 19-20.)

ALJ rejected a treating source opinion based solely upon inconsistent examination notes because "[m]edical notes that do not give an opinion on [the claimant's] physical limitations in the workplace or what activities he would be able to perform do not controvert the opinion of [the claimant's] treating physician") (internal citation omitted).

### IV. RECOMMENDATION

The Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further administrative proceedings.

**SO RECOMMENDED** on this 28th day of March, 2018.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE